# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES of AMERICA** | ) ) ) |  |
| v. | ) ) | **Criminal No.** |
| **CHARLES ADAMS,** | ) ) ) | **09-40027-FDS** |
| Defendant. | ) ) |  |

## MEMORANDUM AND ORDER ON
## PETITION FOR WRIT OF HABEAS CORPUS

**SAYLOR, J.**

On April 2, 2012, a jury found petitioner Charles Adams guilty of (1) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; (2) tax evasion for the year 1996, in violation of 26 U.S.C. § 7201; and (3) tax evasion for the year 2003, in violation of 26 U.S.C. § 7201. On September 27, 2012, the Court sentenced petitioner to 48 months of imprisonment on each count, with the terms to run concurrently. (Dkt. 546).

Adams has moved to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255. He contends that (1) the government's delay in prosecuting him violated the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), and the Fifth and Sixth Amendments to the U.S. Constitution; (2) his trial counsel was ineffective because she failed to move to dismiss for the alleged speedy-trial violations and failed to move for a severance; (3) certain evidence was wrongfully admitted; (4) the evidence was insufficient to prove the crime of conspiracy; and (5) the evidence was insufficient to prove the crime of tax evasion.

For the reasons set forth below, the petition will be denied.

I.     **Background**

On August 12, 2009, a grand jury returned an indictment charging that Adams and six co-defendants participated in a conspiracy to defraud the government by means of a payroll tax fraud scheme between approximately July 2001 and September 2004. (Dkt. 1 at 8-12). The indictment also charged Adams with evading taxes in both 1996 and 2003. (Dkt. 1 at 31-33).

Adams initially represented himself in the proceedings, but obtained court-appointed counsel on April 27, 2010. (Dkt. 106). A March 2004 search of Adams's home, pursuant to a warrant issued on March 19, 2004, provided some of the evidence used to indict him. *United States v. Adams*, 740 F.3d 40, 42 (1st Cir. 2014). Although Adams later moved to suppress the evidence, the Court found that suppression was not warranted and the First Circuit affirmed that finding. *See Adams*, 740 F.3d at 42-43.

A jury trial commenced on March 2, 2012. Adams's principal defense was that he had "a subjective good-faith belief that he was not liable for any of the taxes implicated in his case." *Adams*, 740 F.3d at 42. On April 2, 2012, the jury convicted Adams of one count of conspiracy to defraud the government and two counts of tax evasion. (Dkt. 609).

On appeal, the First Circuit held there was sufficient evidence to convict him of a conspiracy. *See United States v. Floyd*, 740 F.3d 22, 28-30 (1st Cir. 2014). He did not challenge the sufficiency of the evidence as to his conviction for tax evasion.

II.    **Analysis**

A.     **Standard of Review**

Under 28 U.S.C. § 2255(a),

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a); *see also Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002) ("In essence . . . section 2255 is a surrogate for the historic writ of habeas corpus.").

Section 2255 provides for post-conviction relief "only when the petitioner has demonstrated that his sentence '(1) was imposed in violation of the constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack.'" *Moreno-Morales v. United States*, 334 F.3d 140, 148 (1st Cir. 2003) (quoting *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998)). "The catch-all fourth category includes only assignments of error that reveal 'fundamental defect[s]' which, if uncorrected, will 'result[ ] in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" *David*, 134 F.3d at 470 (quoting *Hill v. United States*, 368 U.S. 424, 427-28 (1962)). A "petitioner bears the burden of establishing that [he] is entitled to relief under § 2255." *Troy v. United States*, 946 F. Supp. 2d 172, 181 (D. Mass. 2012) (citing *David*, 134 F.3d at 474).

### B. Alleged Speedy Trial Violations

#### 1. Speedy Trial Act

The Speedy Trial Act provides that when a defendant has entered a plea of not guilty, a trial should commence within seventy days of the time the defendant appears "before a judicial officer of the court" in which charges against the defendant are pending, subject to various periods of exclusion. 18 U.S.C. § 3161(c)(1). Adams first appeared in court on August 20, 2009. His trial did not commence until March 2, 2012.

Section 3161(h) of the Speedy Trial Act provides for several exclusions to calculation of the seventy-day time period. Among other things, time between the filing of a pretrial motion

3

and its disposition is excludable under § 3161(h)(1)(D).  In this case, time was excluded pursuant to § 3161(h)(1)(D) on two occasions when pretrial motions were pending:  from June 17 to July 12, 2011, and from July 12 to September 13, 2011 (on that occasion, time was also excluded pursuant to § 3161(h)(1)(H), delay resulting from motions "actually under advisement.").  (Dkt. 213; 253).

Time may also be excluded at the discretion of the court under § 3161(h)(7)(A) when the Court finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  The statute provides that when excluding time under this section, a court must state "in the record of the case, either orally or in writing, its reasons for [that] finding."  18 U.S.C. § 3161(h)(7)(A).  *See Zedner v. United States*, 547 U.S. 489, 509 (2006) ("This provision demands on-the-record findings.").

Adams contends that there were multiple violations of the Speedy Trial Act.  In particular, he alleges that on several occasions time was excluded under § 3161(h)(7)(A) without providing reasons for the delay on the record.  However, on review, it appears that this requirement was met in each of the relevant exclusions entered by the Court.  In several instances, the Court stated its reasons for exclusions under § 3161(h)(7)(A) in the order itself.  For example, on September 3, 2009, the Court excluded time from that date through October 1, 2009, "to provide the parties additional time to develop their respective discovery plans and producing [sic] discovery under the automatic discovery process."  (Dkt. 36).[1]  In other instances, the Court provided its reasons for exclusions under § 3161(h)(7)(A) on the record in

---

[1] Additional orders that included reasons for exclusion include:  Dkt. 99, filed March 29, 2010; Dkt. 117, filed June 9, 2010; Dkt. 120, filed June 23, 2010; Dkt. 135, filed September 15, 2010; Dkt. 144, filed November 17, 2010; Dkt. 155, filed January 10, 2011; Dkt. 181, filed March 4, 2011; Dkt. 187, filed April 26, 2011; Dkt. 268, filed September 13, 2011; Dkt. 279, filed October 13, 2011; Dkt. 285, filed November 21, 2011.

status reports filed separately with the entry of the orders for excludable delay. For example, on October 15, 2009, the Court filed an order for excludable delay, and filed a status report that same day that provided the reasons for the exclusion. (Dkt. 52; 53).[2]

Even a liberal review of the record indicates that, at most, forty-three days were not excludable from the calculation of the Speedy Trial Act time period.[3] Accordingly, the delay between Adams's first appearance in court and his trial did not exceed the seventy-day requirement of the Speedy Trial Act. *See* 18 U.S.C. § 3161(c)(1).

Furthermore, even if the seventy-day period had been exceeded, Adams's case could have been simply dismissed without prejudice and the government could have then re-indicted him. Section 3162(a)(2) provides as follows:

> If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. . . . In determining whether to *dismiss the case with or without prejudice*, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2) (emphasis added). To that analysis, the First Circuit has added a fourth factor: prejudice to the defendant. *United States v. Franklin*, 630 F.3d 53, 58 (1st Cir. 2011). In analyzing those factors, courts are advised that "dismissal with prejudice is 'a last and rare resort.'" *Id.* (quoting *United States v. Dessesaure*, 556 F.3d 83, 85 (1st Cir. 2009)).

---

[2] Additional status reports that included the reasons for exclusion include: Dkt. 62, filed November 10, 2009 (order), Dkt. 61, filed November 10, 2009 (status report); Dkt. 72, filed December 14, 2009 (order), Dkt. 70, filed December 14, 2009 (status report); Dkt. 84, filed January 28, 2010 (order), Dkt. 83, filed January 28, 2010 (status report).

[3] For example, it is arguable that the following dates should not be excluded: (a) 12 days between August 21 and September 2, 2009 (time between first appearance and arraignment); (b) 14 days between October 1 and October 15, 2011 (retroactive exclusion during which time there were no motions under advisement) (Dkt. 53); (c) 2 days between March 27 and March 28, 2010 (retroactive exclusion during which time there were no motions under advisement) (Dkt. 99); (d) 15 days between May 20 and June 8, 2010 (retroactive exclusion during which time there were no motions under advisement) (Dkt. 117). That results in a total of 43 days of non-excludable time.

Had a Speedy Trial Act violation occurred, the court would have almost certainly dismissed the case without prejudice. First, the charges against Adams were serious and carried significant penalties of up to 87 months of imprisonment. (Dkt. 589) (transcript of Adams's sentencing on September 27, 2012). Second, the facts and circumstances surrounding the delay do not indicate that the government was acting in bad faith, nor does Adams now allege bad faith or intentional delay. *See Franklin*, 630 F.3d at 58; *Troy*, 946 F. Supp. 2d at 181. Third, Adams has made no showing and there is no indication that, if dismissed, re-prosecution would disrupt the administration of justice. *See Franklin*, 630 F.3d at 59. Finally, Adams does not allege that he suffered prejudice due to the delay, such as the inability to call witnesses or present evidence. To the contrary, his counsel had indicated that the delays were beneficial in helping her to prepare Adams's defense. (Dkt. 711-1 at ¶15).

Thus, even if there had been a violation, Adams's case likely would have been dismissed without prejudice, whether or not the limitations period had expired at the time of the dismissal. Under 18 U.S.C. § 3288, when an indictment is dismissed "for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment . . . ." 18 U.S.C. § 3288.

When, as here, "there is no reasonable probability that dismissal would have resulted in a different outcome, [a defendant] cannot establish resulting prejudice." *Troy*, 946 F. Supp. 2d at 182. Accordingly, despite Adams's argument to the contrary, he was not prejudiced because he would have faced re-prosecution even if the Speedy Trial Act had expired and the limitations period had passed.

6

## 2. Alleged Sixth Amendment Violation

Adams also contends that the delay between his indictment in August 2009 and trial in 2012 violated his right to a speedy trial under the Sixth Amendment.[4]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. That right is considered "essential" to prevent lengthy periods of incarceration before trial, to reduce the anxiety the defendant may feel upon public accusation of a crime, and to protect the defendant from impairments caused by a delay in his or her ability to mount a defense. *Smith v. Hooey*, 393 U.S. 374, 378 (1969) (citing *United States v. Ewell*, 383 U.S. 116, 120 (1966)). In *Barker v. Wingo*, the Supreme Court acknowledged that the Sixth Amendment right to a speedy trial is a "slippery" right that "depends upon circumstances." 407 U.S. 514, 522 (1972). Because it is difficult to know "how long is too long," the Supreme Court has developed a four-factor test to assist courts in making that determination. *Id*. These factors are (1) the length of the delay, (2) the cause of the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the defendant was prejudiced by the delay. *Id.* at 530.

As a threshold matter, Adams errs by attempting to characterize the search of his home in March 2004 as an "official accusation." (Dkt. 681-1 at 45). The Supreme Court has made clear that "the Sixth Amendment right to a speedy trial has no application beyond the confines of a *formal criminal prosecution*. Once triggered by arrest, indictment, or other *official accusation*, however, the speedy trial enquiry must weigh the effect of delay on the accused's defense . . . ." *Doggett v. United States*, 505 U.S. 647, 655 (1992) (emphasis added). The 2004 search of Adams's home was not an "official accusation," nor did it commence a "formal criminal

---

[4] The First Circuit has noted the "unusual" possibility that a delay that does not violate the Speedy Trial Act may still violate the Sixth Amendment. *See United States v. Casas*, 425 F.3d 23, 33 (1st Cir. 2005).

prosecution" against him.  The clock began to run when Adams was indicted or arrested (whichever occurred first), and not when the search was conducted.  *See Casas*, 425 F.3d 23, 33.

The first factor for the Court to consider is the "extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."  *Doggett*, 505 U.S. at 651-52.  Most courts will consider a delay in excess of one year significant enough to proceed with the remaining factors.  *See id.* at 652 n.1; *Rashad v. Walsh*, 300 F.3d 27, 33 (1st Cir. 2002) (indicating that delays of less than one year ordinarily do not satisfy the first factor).  More than a year passed between Adams's indictment on August 12, 2009, and the commencement of his trial on March 2, 2012; the first factor is therefore satisfied.

The second factor is the cause of the delay.  *Barker*, 407 U.S. at 531.  Here, the delays are attributable to the fact that this was a fairly complex case involving multiple counts against multiple defendants.  In *Rashad v. Walsh*, the First Circuit indicated that where "valid reasons cause delay, the delay does not count against the state at all."  300 F.3d at 34 (citing *Barker*, 407 U.S. at 531); *see also Casas*, 425 F.3d at 34 (holding that a delay is reasonable in a case involving multiple defendants and a conspiracy charge).  This factor weighs strongly against a finding of a violation.

The third factor is whether the defendant asserted his right to a speedy trial.  *Barker*, 407 U.S. at 532.  Here, the government concedes that, though he later withdrew the motion, Adams asserted his right when he moved for a speedy trial on November 4, 2009.  (Dkt. 60; 711 at 30).

The fourth and final factor is whether the defendant was prejudiced by the delay.  In making that assessment, the court should look to the considerations the Supreme Court identified in *United States v. Ewell*.  *Barker*, 407 U.S. at 532, 532 n.33 (citing *Ewell*, 383 U.S. at 120) (noting that the right to a speedy trial "prevent[s] oppressive pretrial incarceration . . .

minimize[s] anxiety and concern of the accused . . . [and] limits the possibility that the defense will be impaired"). Adams was not incarcerated pending trial, nor does he assert that he was impaired in his ability to mount a defense due to the delay. *See Smith*, 393 U.S. at 378; (Dkt. 64, 412). To the contrary, his attorney indicates that she did not object to the delays because she needed the additional time to prepare his defense. (Dkt. 711-1 ¶15). Adams does indicate that he experienced significant stress and anxiety due to the pending charges against him. (Dkt. 681-1 at 8-9). The First Circuit has held, however, that "'considerable anxiety normally attends the initiation and pendency of criminal charges; hence only undue pressures are considered.'" *See Casas*, 425 F.3d at 34 (quoting *United States v. Henson*, 945 F.2d 430, 438 (1st Cir. 1991)). Accordingly, Adams cannot demonstrate that he was prejudiced by the delay and so the fourth factor weighs against a finding of a violation.

In summary, and after weighing the *Barker* factors, it is clear that Adams was not prejudiced by the delay and that his right to a speedy trial under the Sixth Amendment was not violated.

### 3.     Alleged Fifth Amendment Violation

Adams further contends that the government violated his Fifth Amendment due-process rights because of the delay between the government's March 2004 search of his home and his indictment in August 2009. (Dkt. 681-1 at 44). Pre-indictment delay may violate a defendant's right to due process when such a delay "caused substantial prejudice to [defendant's] right[ ] to a fair trial and . . . the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971). The delay must therefore be both prejudicial and the result of the government's bad faith efforts to delay indictment. *See id.*; *United States v. DeCologero*, 530 F.3d 36, 78 (1st Cir. 2008). However, "[t]he Due Process Clause has only a

9

limited role in this context because the statutes of limitations provide the primary protection against undue pre-indictment delays." *Id.* at 78 (citing *Marion*, 404 U.S. at 324).

Here, Adams was indicted within the six-year statute of limitations for the relevant offenses. *See* 26 U.S.C. § 6531. There is no evidence that the delay was intentional, in order to gain tactical advantage, or that defendant was prejudiced by the delay. Under the circumstances, the pre-indictment delay in this case did not result in a due-process violation.

### C. Allegations of Ineffective Assistance of Counsel

Adams further contends that his attorney rendered ineffective assistance of counsel at trial in violation of the Sixth Amendment. Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must demonstrate (1) counsel's performance or actions were deficient or unreasonable and (2) counsel's performance prejudiced the defense so that there is a "reasonable probability" that the outcome would have been different absent the deficient performance. *See id.* at 687-88, 694-95.[5]

Under *Strickland*, there is a presumption of reasonable performance on the part of the attorney, and petitioner bears the burden of overcoming that presumption. *See Strickland*, 466 U.S. at 689; *Cirilo-Munoz v. United States*, 404 F.3d 527, 530 (1st Cir. 2005). Courts are advised that "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. If an attorney's choice or course of action can reasonably be characterized as trial strategy and was "made after thorough investigation of law and facts relevant to plausible options," those decisions "are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690; *Sleeper v. Spencer*, 510 F.3d 32, 39 (1st Cir. 2007) (quoting *Yarborough v. Gentry*, 540 U.S. 1,

---

[5] There are three occasions when counsel's performance is *per se* prejudicial and is not subject to the *Strickland* test: (1) complete denial of counsel; (2) failure to subject prosecution's case to adversarial testing; and (3) occasions when no lawyer, however competent, could provide reasonable representation. *See United States v. Cronic*, 466 U.S. 648, 659 (1984). None of those exceptions to *Strickland* applies to Adams's representation at trial.

5-6 (2003)) (stating that counsel "has 'wide latitude in deciding how best to represent a client'").

### 1. Counsel's Failure to Move to Dismiss for Alleged Speedy Trial Violations

As stated above, the record indicates that there was no violation of the Speedy Trial Act, nor was there a violation of Adams's constitutional right to a speedy trial.

Adams's attorney made a decision not to move to dismiss for speedy trial violations, which can be readily characterized as a strategic decision. In an affidavit, Adams's attorney has indicated that she did not object to the government's requests for excludable delays because she needed the time to prepare adequately for trial. (Dkt. 711-1 at ¶15). As she notes in her affidavit, she made clear to Adams that even if they were successful on a motion to dismiss for Speedy Trial Act violations, the case would simply be re-prosecuted. *Id.* Therefore, even if his attorney's decision not to move to dismiss could be considered unreasonable (and it was not), it still was not prejudicial to Adams because the government would have re-indicted Adams even if the case was dismissed for Speedy Trial Act violations. *See* 18 U.S.C. §§ 3162(a)(2), 3288; *Strickland*, 466 U.S. at 694-95. Accordingly, Adams cannot demonstrate a "reasonable probability" that the outcome would have been different in a subsequent prosecution. *See id.*

### 2. Counsel's Failure to Move for Severance

It is unclear whether Adams contends that his counsel rendered ineffective assistance by failing to move to sever his case from those of his co-defendants, or whether Adams believes his counsel should have moved to try the conspiracy and tax evasion counts against him separately. Assuming that Adams contends the former, Adams alleges that he was compelled to testify in order to counteract the damaging testimony of his co-defendants. (Dkt. 681-1 at 40). On the stand, Adams acknowledged that he did not pay his taxes, but stated that he did so because he did not believe he owed taxes. *See Floyd*, 740 F.3d at 36. In contrast, his co-defendants simply

11

challenged the adequacy of the government's evidence against them. *See id.*

Presuming counsel's competence under *Strickland*, it is reasonable for an attorney not to move to sever. *See United States v. Jackson*, 33 F.3d 866, 875-76 (7th Cir. 1994). Failure to sever may be considered "a tactical decision on the part of counsel." *Id.* In addition, "[w]hen defendants are charged with conspiracy, there is a strong presumption in favor of a joint trial." *See United States v. Vega-Molina*, 407 F.3d 511, 532 (1st Cir. 2005); *see also Floyd*, 740 F.3d at 36 ("The general rule is that defendants who are properly joined in an indictment should be tried together."). Co-defendants who raise defenses that are antagonistic to one another are only prejudiced by being tried together when "'the tension between defenses [is] so great that a jury would have to believe one defendant at the expense of the other.'" *See Floyd*, 740 F.3d at 36 (quoting *United States v. Yefsky*, 994 F.2d 885, 897 (1st Cir. 1993)). The First Circuit has already held that no such antagonism existed between Adams and his co-defendants because the jury could have believed the defenses offered by all of the defendants without having to choose to believe one defendant's word against the other. *See Floyd*, 740 F.3d at 36-37.

Furthermore, several of Adams's co-defendants moved to sever and the Court denied those motions on September 13, 2011. (Elec. Clerk's Notes for hearing held on September 13, 2011; Dkt. 711 at 47). Adams's attorney has stated that her research and evaluation of the facts led to her decision not to move to sever the parties. (Dkt. 711-1 at ¶12). It is reasonable for Adams's attorney to have chosen not to move to sever given the court's denial of his co-defendants' motions for severance. *See Sleeper*, 510 F.3d at 39.

In the alternative, if Adams contends that his counsel should have moved to try his tax evasion and conspiracy counts separately, that can also be characterized as a reasonable trial strategy on the part of his attorney. *See Strickland*, 466 U.S. at 690. In an affidavit, his attorney

asserts that there was no legal basis to sever the counts against Adams because his defense to each count was "virtually identical." (Dkt. 711-1 at ¶13). This indicates that she made a reasonable strategic decision, which is accorded a "highly deferential" level of scrutiny under *Strickland*. *See id.* at 689-90.

Finally, Adams has not demonstrated that he was prejudiced by any error. He cannot show that the outcome of the trial would have been different had his attorney been successful in moving to try the counts separately or in moving to sever his case from that of his co-defendants.

### D.  Alleged Wrongful Admission of Evidence

In his petition, Adams again raises a claim that evidence gathered during the March 2004 search of his home was wrongfully admitted at trial. (Dkt. 681-1 at 51). The First Circuit has held that admission of that evidence was proper because the Fourth Amendment's warrant requirement "was fully satisfied in this case." *Adams*, 740 F.3d at 43. Although Adams suggests that the search of his bedroom (and in particular the search of his wife's bureau) was unconstitutional, the First Circuit held that the warrant used to search his home met the requirements of the Fourth Amendment, and therefore the scope of the search was proper. *Id.*

Adams also contends that the search of his home was unlawful because it was not conducted according to regulations set forth in the Internal Revenue Manual. (Dkt. 681-1 at 53-54). Adams maintains that the manual was updated in 2004, but it is not, in fact, clear whether this manual was updated and accessible to agents prior to the March 2004 search of his home. *See id.* The 2005 version of the manual (issued after the search) indicates that IRS agents should consider alternative means of collecting evidence "before making the decision that a search warrant is the least intrusive means to acquire the evidence." *See* Internal Revenue Manual 9.4.9.2(4) (2005). Adams highlights this language to suggest that IRS agents used improperly intrusive methods in conducting the search of his home. (Dkt. 681-1 at 54).

The "least intrusive means" language, however, does not instruct agents in *how* to conduct a search, but rather instructs agents to determine if another method of gathering evidence may be less intrusive than seeking a search warrant. *See* Internal Revenue Manual 9.4.9.2(4). The manual further instructs that search warrants may be appropriate in "significant tax investigations." *See id.* In light of the scope of the charges against Adams and his co-conspirators, the use of a search warrant in this investigation was reasonable.

In any event, the Fourth Amendment, not the Internal Revenue Manual, is the binding source of law regarding reasonable searches. *See United States v. Simon*, 2010 WL 3980310, at *9 (N.D. Ind. Oct. 8, 2010) ("[T]he [Internal Revenue] manual doesn't provide the yardstick by which reasonableness is judged for Fourth Amendment purposes . . . ."). Because the search warrant in this case was reasonable and the search did not violate Adams's constitutional rights, the evidence was properly admitted. *See Adams*, 740 F.3d at 43.

### E.     Alleged Failure to Prove Conspiracy

Adams further contends that the government did not prove a required element of the conspiracy charge against him under 18 U.S.C. § 371: that the defendant entered into an agreement. Adams has already appealed his conspiracy charge to the First Circuit, which affirmed his conviction. *See Floyd*, 740 F.3d at 30. The First Circuit held:

> In sum, the record discloses proof that, when viewed in the light most favorable to the verdict, was sufficient for a rational jury to conclude that the defendants knowingly and voluntarily entered an agreement with Adams to promote the payroll tax scheme; that a purpose of the scheme was to facilitate unlawful tax evasion by its clients; and that the defendants undertook a series of overt acts in furtherance of the agreement.

*Id.* Adams may not raise this argument again in a motion to vacate because "[i]ssues disposed of on a prior appeal will not be reviewed again by way of a 2255 motion." *Tracey v. United States*, 739 F.2d 679, 682 (1st Cir. 1984) (citing *Dirring v. United States*, 370 F.2d 862 (1st Cir. 1967)).

Such issues may be raised in a § 2255 motion only if a petitioner can demonstrate that "equitable considerations" are at play, such as "actual innocence or cause and prejudice." *Conley v. United States*, 323 F.3d 7, 22 (1st Cir. 2003). Adams has not provided new evidence of actual innocence. Accordingly, this Court will not revisit the issue.

### F. Alleged Failure to Prove Tax Evasion in Counts VI and VII

Finally, Adams contends that there was no evidence of "evasion," and that the two counts against him under 26 U.S.C. § 7201 are therefore not supported by the evidence. Adams did not appeal these charges to the First Circuit, however, and cannot now appeal these charges in a motion to vacate. "A nonconstitutional claim that could have been, but was not, raised on appeal, may not be asserted by collateral attack under § 2255 absent exceptional circumstances." *Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994). The proper place to appeal these charges is with a court of appeals, because "direct appeal provides criminal defendants with a regular and orderly avenue for correcting such errors. The Supreme Court has repeatedly emphasized that § 2255 is not a substitute for direct appeal." *Id.* (citing *United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal.")). Accordingly, this Court will not consider those claims absent a showing that Adams has raised the issue on direct appeal.

## III. Conclusion

For the foregoing reasons, the motion of petitioner Charles Adams to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: April 8, 2015